Appendix 324-0496, For the Urban, Hopeland, by Nicholas Esposito v. ITI Intermodal, Inc. Appendix 324-0496, For the Urban, Hopeland, Inc. Mr. Epstein? Esposito, excuse me. Good afternoon. It's an honor to be here. Thanks for joining us. Justice, by the way, Justice Holdridge is going to be listening to the oral arguments but could not be here today. Oh, I hope I sound good. Thank you. Thank you, Justice. As you know, I represent Courtney Urban, who was an employee, a clerk at the company, and her husband took another job. A while after that, a couple of days later, she was fired. We alleged in our complaint that she was told that she was fired because she was married. What we've outlined, what we've argued, one other thing about the court, both decisions that were rendered by the court were strictly in the court orders. No opinion on either of them. So in the first one, I anticipated having to amend based on a couple of questions the judge had asked. So I amended for that reason but not because there was any guidance. I'm not being critical. It's just what happened. So, Mr. Esposito, you did have an opportunity to argue your case. I argued the case, absolutely, in both motions. And so I did. I amended the complaint and we argued again on a motion to dismiss. Once again, there were no reasons given. That's okay. We did have a chance to argue the case. So at this point, then, at the appellate court level, we're really starting from scratch anyway because it's to no one's review, and we get that. So if we look at, we talk about three different couples, Courtney Urban and her husband. They were married. She was a billing specialist. The company was aware that she was married. And they both did well. He left, went to a competitor. Two days later, she got fired. He told the defendant he was leaving to go to the other company in the same industry. That's what we've alleged. Everything is what we've alleged. Their general manager, Travis Cooley, it is alleged, told her that her employment termination was solely on the basis that she was married. In the first complaint, we added some additional information. They've addressed it in court. They argued about it. They presented it to you. And to the extent that any of the prior allegations in the first complaint have any impact at all, then they are evidentiary admissions, if anything. They're not judicial admissions. But you did suggest in the first complaint, or you implied in the first complaint, that she was told that your husband really screwed up, I think was the language. No, no, no. They weren't happy that he left. He made a mistake, basically. A big mistake. He made a big mistake. That's what they told her. We allege that. In the second complaint, we specifically allege that the same guy told her that it was because she was married. No discovery. We don't know. We're trying to figure that out. But anyway, we have two other couples. She was given no other reason, by the way. That's all she was told. In addition, in both complaints. On information and belief, she is replaced by an unmarried person. We allege that. Of the other two couples, they lived together. They weren't married. The female in the couple resigned to go to work with the same competing company that my client's husband went to. The remaining male partner had the same job and business information as my client. The other couple's male partner was not fired. Of the second other couple, at about the same time plaintiff was fired, another one of the two defendant employees were known to defend to be a couple and had a child together. But they were not married. Again, the female of the couple resigned to go to work, again, with the same competing company that my client's husband went to. The other couple's male partner was not fired. The remaining male partner had the same job and business information as our client. All of them did. All of them did. So, same company for the spouse. Remaining partner, or wife and partner, had the same jobs. There are three cases that are cited by the defendant in their motion to dismiss. Bowden, Davis, and Chen. The Bowden case is factually dissimilar to ours in that, in that case, there was specifically a no spouse policy. And it was about police people riding together in a squad car in the same area. And they developed the need for them not to have their spouses in a same squad car. Same area, wasn't it? Same area. It could be riding together. And I think they specifically talked about that. So, together, same squad car. What would be the reactions of either spouse in that situation if they were under stressed arrest, they were under attack? And that was the reason it was given. So, it is certainly factually distinguishable from our case. We have all factual allegations that she was terminated and that unmarried couples, partners left the company, but we're not. Going to Bowden, Bowden was a decision rendered after testimony had been taken at a public hearing. Not here. Not in our case. In Bowden, the question was whether unlawful discrimination based on marital status under the Illinois Human Rights Act includes, quote, no spouse policies in the workplace. So, the focus of Bowden was no spouse policies. State troopers Jim and Colleen were employed by respondents. They announced their intent to marry. They were informed that there was an unwritten policy prohibiting married couples from working the same shift in the same patrol area. Colleen was assigned to work in the same three-person squad as Jim. After a period of time, they became romantically involved and decided to marry. They were given options. Jim and Colleen were informed that an unwritten policy existed which prohibited spouses from working in the same shift in the same patrol area. Jim and Colleen then filed separate charges with the Human Rights Department. Captain William Jack Ryan testified. Now, again, testimony was taken in that case. Testimony was given by Captain Jack Ryan who stated that it was his belief that marital couples should not work together in the same patrol, state patrol, for safety and operational reasons. He believed that married couples working the same shift may not act objectively in dangerous situations and their credibility may be questioned in court. After a public hearing in Bowden, the administrative law judge issued an interim order and decision. The appellate court determined that the plain language of the Illinois Human Rights Act only prohibits discrimination based on an individual's marital status, which is defined as married, single, separated, divorced, or widowed. The appellate court concluded that no spouse policies were not based on an individual's marital status. There was no such policy at this company. There's nothing prohibiting anybody from getting married or living together. We agree with the appellate court that the statutory definition of marital status does not encompass identity of one's spouse. The policy prohibiting spouses from working together presents a question that has not been addressed in Illinois otherwise, other than in Bowden. There have been no cases since Bowden on this heart. With respect to Davis, Davis was a summary judgment case. In Davis, there was also a hearing. A former employee brought action to enforce a Human Rights Commission decision that found that a former employer had unlawfully terminated her based on identity of her spouse. The court held that the company officer could not be held personally liable for a judgment against a former employer. The commission's order was void due to the lack of subject matter jurisdiction. So I would submit to your honors that it is not precedent for this case. There was no formal decision with respect to Bowden or anything else that related to the facts in our case. But again, it was a summary judgment case. In that case, it was held that summary judgment should be awarded when the pleadings, depositions, admissions, and affidavits show that there's no genuine issue of material fact. So to the extent that there are questions about whether or not the company knew who the other spouses were, whether they were concerned about the other spouses stealing information surreptitiously through their spouse or their partner, that is an adjustment. We need discovery for that. We're at the complaint stage. We have an affirmative statement in our complaint that she was told in the second amendment in the amended complaint, she was told you were fired because you were married. Whatever else counsel may bring up, none of these cases have a statement like that. None of them. They haven't cited a single case where anything like that was stated and ruled against the complainant. Here the commission expressly determined that, I'm sorry, in Davis, that the discharged couple was discharged because of the identity of the spouse. Applying the holding in Bowden, it said the court lacked jurisdiction, the commission lacked jurisdiction to enter a decision based on the charge. So again, this is all about commission decisions. We don't have that here. We're not challenging the commission. No action has been taken against the commission, either by the defendant or by us, about any decision that was rendered. There was a decision rendered by the Illinois Department of Human Rights. Neither party filed any lawsuit or claim contesting those findings or those determinations. In Chen, a California case regarding marital status discrimination. It's an interesting case, but it is in California, and it cites Bowden. It also goes on to discuss all the myriad decisions about marital status discrimination throughout the country. It talked about Illinois and all these other jurisdictions that have marital status discrimination. In Chen, it said the marital status and retaliation claims were dismissed on motions for non-suit after Chen rested her case. Testimony was taken in that case, too. The trial court did not err in dismissing marital status discrimination claims. The salient factor in Chen is that the origin of the animus toward Chen as a married or a single person was that it was a political decision. She was terminated for politics. That's what Chen's all about. And not based on the fact that she was married or not. So at this juncture, unless you have questions, I'm just going to sum up this way. There's two others, three couples. There's nothing that they've indicated that says that the other two couples don't talk to each other. Because they can't. It's a motion to dismiss. They could have a motion for judgment on the pleadings. They could have raised other issues and brought additional information to the court. They didn't. They had no information about the other two couples. What we did, we alleged that those two couples were treated differently. So you had three people working at the company. One spouse and two partners left. The ones that left all went to the same company, which competed with their prior employer. Our client was married. The other two people were not. But they lived together. They were partners. And one had a child with their partner. They weren't fired. There's only one difference. It's not about whether they might have secrets or not secrets. Here's the point. If they had all these secrets, these other two spouses that left, we alleged that they hadn't been fired. We filed a lawsuit. The company certainly knows, based on what we've alleged, that the potential is that those two people, based on what we said, could have secrets from their spouse that's still with the company. Could. They didn't get fired. We've alleged that they didn't get fired. At this point, do you have any questions for me? No questions. None at this time. Thank you. Esposito. Thank you. Thank you. Counselor, I apologize. I don't have my cheat sheet here. I assume that you are? I am Clarissa Pintado, Your Honors. Pintado? Yes. Thank you. And I echo the sentiments of opposing counsel that it's an honor to be here. We had a full courtroom earlier today. You missed that. We had some students visit. High school kids packed. That's what I heard. Clarissa Pintado for Appellee ITI Intermodal. The Will County Circuit Court properly dismissed Appellant Urban's amended complaint. First, Will County correctly applied the Illinois Human Rights Act, which has a very clear and concise definition of marital status. Second, it correctly applied Illinois Supreme Court precedent of Bowdoin and this court's precedent of Davis v. Haas. Can I ask you, when you say properly considered and denied, is this the first petition or the second? The first pleading? The second amended complaint properly denied that, properly dismissed that. Thank you, Your Honor. And finally, although it wasn't addressed so much today, it's addressed in the briefs, that the Circuit Court was not required to apply the McDonnell-Douglas framework, but even applying that framework, ITI is still entitled to judgment as a matter of law. So the Illinois Human Rights Act prohibits discrimination based on marital status and the definition of marital status in the Illinois Human Rights Act is the legal status of being married, single, separated, divorced, or widowed. It does not, for example, cover a refusal to hire an unwed mother or a refusal to hire anyone who is not married or is single. In Bowdoin, the court said that the most reliable indicator of legislative intent is the language of the statute itself, and it should be given its plain and ordinary meaning. And courts should not read into the statute's language that is not expressed. And the language as expressed here does not protect an employee due to actions by their employer based on the identity or actions of a spouse. Appellant would like to read into that statute language about the actions of a spouse, including that the spouse went to go work for a competing company. But again, it should be given its plain and ordinary meaning. The facts apparent in the record here are that appellee, ITI, was aware the entire time of appellant's employment that she was married to her husband who also worked at ITI from the moment that she began working there. And two years after that, her husband notified ITI that he would be resigning to work for a competing company in the same industry. Two days later, she was terminated. The original complaint also added or had an additional admission that appellant had told ITI that it, excuse me, that ITI had told appellant that it had to terminate her because her husband was making a huge mistake leaving its employee. And that's in the record at C5, page 11. Sorry, paragraph 11. So this case is not about whether she was terminated based on being married or single or divorced or widowed. This case is about her being terminated because her husband went to work for a competing company. Counsel, let me ask you. Go back. Do you agree that the second or the amended petition is the operative pleading that we're dealing with? I do agree with that, Your Honor. However, I also believe that the statements that were taken that were made in her initial pleading are judicial admissions. Do you understand that when a pleading is, in fact, withdrawn under Foxworth, I think it is? Oh, no, that's actually Marinelli. So we're talking about how she alleged the four elements of a class in the second petition, but she did not put in the statements that you're referencing in the first, and those would not be judicial admissions. Do you agree with that statement, or do you think they are? I believe they are, Your Honor. They are. If you'll bear with me just one moment. Absolutely. I should have brought my flyer up here. Sure. And I think we cited to a case that's also at C57 in the record. It's Shelton v. OSF St. Francis Medical Center, and it's a 2013 case. C57, you said? Yes, and it says that judicial admissions are deliberate, clear, unequivocal statements by a party about a concrete fact within the party's knowledge. And also ruling on a motion for a judgment on the pleadings, courts can consider facts that are apparent on the face of the pleadings, matters subject to judicial notice, as well as judicial admissions in the record. Well, my point, counsel, is that under one pleading that was withdrawn under this one, and then she refiled a new complaint with different allegations, that old complaint is, in fact, no longer anything close to a judicial admission. But you believe it is? I believe it is, Your Honor. But even accepting that it is not a judicial admission based on the facts that are in the amended complaint, they still allege that her husband notified them of his resignation and was then terminated two days before her termination. So I think you can reach the same conclusion even with the facts alleged just in the amended complaint. Mr. Esposito, I apologize, I keep tripping over your last name, Mr. Esposito, mentioned that there was a difference between the two. I believe you said something about evidentiary as opposed to a certified complaint would be a judicial admission and the other would be evidentiary in nature. Do you have a response to that comment? I don't think any authority was cited for that, but if it is evidentiary in nature, then I think the court can take it as evidence in considering its holding. So since this is a judgment of the pleadings as opposed to a motion to dismiss, then we can use that as evidence? I would say so, Your Honor. I don't think there's been any authority otherwise presented. It becomes a problem if the case goes on, presumably for plaintiffs, but at this point we're looking at the judgment of the pleading. Yes, Your Honor. And the lower court had before it, again, these issues were thoroughly briefed. It also had the Illinois Supreme Court case of Bowdoin, as well as the precedent from this court of Davis v. Haas, which followed Bowdoin. And notably, the court in Bowdoin reasoned that in order to find discrimination in that case, it would have to examine not only the legal status, but also the relationship between the two parties. And that's exactly what appellant is asking this court to do. And Davis v. Haas is a case that had very similar facts to this one. In that case, the husband was terminated one year prior to plaintiff. And again, in order to find that that commission's determination was void, it had to determine that that was not considered marital status discrimination. And also, it was mentioned the Chen case, which, yes, it is a California case. And in that case, as counsel for appellant mentioned, that was determined to be termination based on politics or animus, political animus. And that's the same situation that we have here, where one employee, a spouse, goes to work for a competing company. Counsel, let me draw your attention to Marinelli, okay?  So there's four facts that have to be established for a prima facie case. That she's a member of a group protected by that. There's no dispute for that, correct? There's no dispute there, Your Honor. She was performing satisfactorily. No dispute, correct? Not for purposes of this, Your Honor. No, okay. She was discharged, notwithstanding her satisfactory performance. Correct. And the last, a similarly situated employer, excuse me, employee outside of her protected group was not discharged. Do you agree with that? The two partners that did not get fired. So as we mentioned, and so I think Marinelli is following, those are the kind of McDonald's-Douglas, McDonald-Douglas framework factors as well, which since then the Seventh Circuit has held that the singular question with respect to whether discrimination has occurred is whether the evidence, whether a reasonable fact finder could determine based on the evidence that the protected status caused the discrimination. But this was a judgment on the pleadings, correct? Yes, Your Honor, it was. All right, thank you. And here, the facts in the record show that marital status did not cause the discharge. But even looking at those. What do the facts show? The facts show that the discharge was caused by her spouse going to work for a competing employer. Just because the boss said huge mistake, that's all we need? I believe that's all you need in addition to the fact that the facts also say that she is going to, that he has gone to work for a competing employer and that she's fired two days later. I think a reasonable fact finder can conclude based on those facts that the reason for her termination, she'd also worked there for two years, they knew she was married for that entire period of time. So based on those facts, a reasonable fact finder can determine that marital status had nothing to do with why she was fired. So under Ortiz, that's the singular question that this court needs to ask itself. And furthermore, so under Ortiz, again, that is the singular question. But even if we apply the Marinelli factors or the McDonnell-Douglas burden-shifting framework, the similarly situated employees that they've identified actually have different circumstances because the spouses in those cases voluntarily left to go work at another employer. Whereas here, the spouse announced that he was doing so and was terminated. So the spouses of the individuals that appellant is citing to did not voluntarily, sorry, did voluntarily leave, whereas the spouse here did not. The spouse here was terminated. So even under the Marinelli framework, appellee prevails because they cannot make out a prima facie case of discrimination. So the other two partners were allowed to leave on their own terms, and the husband in this case was terminated before he left on his own terms. Yes, Your Honor. I think that shows that there is political animus here. And that's in the pleadings? That is in the pleadings. I'm sorry, I need to understand. Her husband, you said he was terminated before she was terminated. Correct. After he gave his notice, though, that he was leaving. Yes. Two days later, she was fired, correct? Yes, Your Honor. Okay, thank you. Thank you. Are there any other further questions? I have no other questions, Justice. I don't have any other proceedings. Okay. Thank you. Thank you, Your Honors. For the purporting reason, we would respectfully request that this Court affirm the judgment on the pleadings. Thank you. Thank you. Mr. Clark? Rebuttal, Mr. Esposito. Pardon me? It's time for your rebuttal. Yes, sir. Thank you. We need to get to the facts, sir. This is alleged. On November 10th, my anniversary, plaintiff's husband notified defendant he would be leaving defendant to take a position at a different company, at another company in the same industry. We don't allege he was fired. And they haven't established it. They haven't even argued it. This is the first time I'm hearing that. Next, with all due respect to the lower court, counsel said the decision was clear and concise. It certainly was concise, but it wasn't clear. In fact, the court basically in both decisions said, I'm finding based on what's in their brief, or in their motion. I don't know what that is. And that's important when you consider the point about evidentiary admissions. He didn't say in his order, and I'm relying on these evidentiary admissions. There's nothing there. So you obviously disagree that we could use an evidentiary admission to come to the conclusion that Ms. Mathado wants us to in this case. You can use evidentiary admissions in certain circumstances, yes. But you're saying we can't use it in this case, because it's not a judicial admission. I'm saying no, you shouldn't. But even if you did, it doesn't matter. The point that's being made here, and I've heard Your Honor talk about this, is this a judgment in the pleadings? But what's it relying on? We don't know. We don't know that it relied on that evidentiary admission, or if the court even determined that that was an evidentiary admission. Nobody's ever raised it until this court, as an admission of anything. With respect to McDonnell-Douglas, we laid out the requirements for McDonnell-Douglas' review, and we meet all those, based on the pleading. Oh, one more point. Oh. No, it was about the voluntary leave. He didn't volunteer it. He didn't say anything. Do you have any questions for me? I don't have, Mr. Esposito. Do you? I do. Counsel, I agree with much of what you've said here. So you want us to remand this back to the trial court?  Vacate the judgment in the pleadings? Yes. I presume that you want to do discovery. Yes. What if you find out that the reason that your client was fired was because of this huge mistake, because of the identity of her husband, not because of the status of her husband? We'll have to see. At this point, I don't want to predict that, certainly. I'm not going to tell my client that. Your Honor, I've been here a long time, but I haven't argued in front of appellate court in a while. No, no. I appreciate your candor, and that, I would say, was a very good answer. Anything else? Thank you. All right. Appreciate your courage. Thank you very much for your arguments here today. We're going to take this under advisement and issue a written ruling in due course.